IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARIO FREEMAN,**

      **Plaintiff,**

  v.                                 **Civil Action 1:24-cv-00298**
                                      **Judge Douglas R. Cole**
                                      **Magistrate Judge Kimberly A. Jolson**

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, et al.**

      **Defendants.**

## REPORT AND RECOMMENDATION

Before the Court are Defendant's Motion for Summary Judgment (Doc. 22) and Plaintiff's Motion for Summary Judgment (Doc. 26). For the following reasons, the Undersigned **RECOMMENDS GRANTING** Defendant's Motion and **DENYING** Plaintiff's Motion.

**I.    BACKGROUND**

Plaintiff Mario Freeman, who is incarcerated at the Southern Ohio Correctional Facility ("SOCF"), filed this *pro se* action in May 2024. (Doc. 2). Relevant here, Plaintiff's Complaint alleges that a correctional officer at SOCF, Defendant Devon Yazell, hurt him. (*Id.* at 3).

The entirety of Plaintiff's allegations against Defendant Yazell is as follows:

> On 5/31/23 at 6:02 PM[,] C.O. Yazell pushed me and put the cuffs on me after an incident. And during the walk to the [hole,] he bent my thumb back trying to break it causing me pain. [I]f you look at the camera[,] you can see him bending my thumb back trying to make it look like I was resisting.

(*Id.*; *see also* Doc. 25 at 2). Plaintiff maintains that during this incident, he was not resisting or acting belligerently, and he did not hit Yazell in the face. (Doc. 25 at 2; Doc. 26 at 2).

Defendant Yazell's account of events is different. According to him, on May 31, he directed Plaintiff to place his hands on the wall for a "routine pat down." (Doc. 23-1 at 2

1

(Declaration of Defendant Yazell)). Plaintiff then struck him in the face and the neck. (*Id.*). Yazell held Plaintiff against the wall, and another officer, Lieutenant Wellman, helped place Plaintiff in cuffs. (*Id.*; *see also id.* at 4 (Declaration of Lt. Wellman)). The two officers escorted Plaintiff to a "strip cage" before returning to their duties. (*Id.* at 2, 4).

Following the incident, both Yazell and Wellman submitted use of force reports. (*Id.* at 9–11). SOCF gave Plaintiff the chance to make a statement as well, but he declined. (*Id.* at 17 (Plaintiff's use of force statement saying "not right now"); *but see* Doc. 23-1 at 73 (Plaintiff's written statement at the related incident hearing that he thought Yazell was done with the pat down, and he was "getting ready to walk away")). Nonetheless, just under three hours after the incident, Nurse Colton Cox examined Plaintiff. (*Id.* at 18). According to Nurse Cox's report, Plaintiff stated "I don't have any injuries. I'm fine." (*Id.* (cleaned up); *see also id.* at 26 (Declaration of Nurse Colton Cox stating Plaintiff "reported no injuries")). Nurse Cox also noted that Plaintiff had no other observable injuries, and Plaintiff refused the opportunity to receive additional medical examinations. (*Id.* at 18, 26). Deeming no other treatments necessary, Nurse Cox released Plaintiff to restrictive housing. (*Id.*).

Despite Nurse Cox's report to the contrary, Plaintiff insists that he told both medical and correctional officers about his hurt thumb while he was in the strip cage. (Doc. 25 at 4–5). And the next day, his thumb was swollen and painful. (*Id.* at 5). Plaintiff asserts he asked to see medical again, but his request was denied. (Doc. 26 at 3).

Defendant Yazell filed a motion for summary judgment on Plaintiff's single 42 U.S.C. § 1983 claim for excessive force. (Doc. 22; *see also* Doc. 6 at 4; Doc. 9 at 7 n.5 (construing Plaintiff's allegations as bringing an Eighth Amendment excessive force claim against Defendant Yazell)). As discussed in more detail below, Defendant submitted video footage of the incident

2

with his briefing. (Docs. 29, 33). Plaintiff also filed a motion for summary judgment, though it came more than two months after his deadline to do so. (Doc. 26). The Motions are ripe for review. (Docs. 22, 25, 26, 27).

## II. STANDARD

A court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III. DISCUSSION

The Court considers the parties' Motions for Summary Judgment concurrently. As an initial matter, however, the Court's scheduling order set the parties' deadline to file dispositive motions to April 17, 2025. (Doc. 11). On June 26, the Court received Plaintiff's Motion, which fails to acknowledge that he filed it over two months late. (Doc. 26 at 4 (certificate of service dated June 22, 2025)). Regardless, the Undersigned finds that the interests of justice favor considering Plaintiff's untimely Motion. Notably, Defendant does not argue otherwise.

Turning to the Motions themselves, Plaintiff's Eighth Amendment claim against Defendant Yazell stems from his assertion that Yazell pushed him against the wall and bent his thumb during the subsequent escort. (Doc. 25 at 2; *see also* Doc. 26 at 2); *Pelfrey v. Chambers*, 43 F.3d 1034, 1037–38 (6th Cir. 1995) ("[A]ll post-conviction excessive force claims are to be raised exclusively under the Eighth Amendment[.]"). And video evidence corroborates some of what Plaintiff says happened. (*See* Docs. 29, 33). The footage begins by showing Plaintiff place his hands against the wall in preparation for Yazell to search him. (Doc. 29, Video X60A32970 at 0:23). As Yazell bends down to search Plaintiff's legs, Plaintiff brings his left arm backwards. (*Id.* at 0:28). Plaintiff's upper extremity makes contact with Yazell's upper body, though the camera angle does not clearly show the extent of the contact. (*Id.*). Plaintiff immediately lifts his left hand back up against the wall. (*Id.* at 0:29). Yazell pushes Plaintiff's back towards the wall, then instructs Plaintiff to put his hands behind his back. (*Id.* at 0:30–0:33). Another officer arrives and holds Plaintiff against the wall while Yazell pulls out handcuffs. (*Id.* at 0:33–36).

In response to the second officer asking what happened, Defendant Yazell states Plaintiff "fucking smacked me, dumbass bitch." (*Id.* at 0:38–0:42). After cuffing Plaintiff, Defendant tells him to "come on," and Yazell, along with at least two other officers, escorts Plaintiff down the hallway. (*Id.* at 0:44–0:52). An officer tells Plaintiff to move his hands, and the officers fumble with Plaintiff's hands and fingers for a few moments. (*Id.* 0:53–1:03). During the escort, Yazell holds Plaintiff's left arm. (*Id.* at 1:04). One of his hands holds Plaintiff's forearm, while the other grips Plaintiff's thumb. (*Id.*). Yazell holds Plaintiff's thumb in such a way that he bends Plaintiff's thumb straight back, almost parallel to Plaintiff's forearm, for almost thirty seconds of the escort. (*Id.* at 0:52–1:20). Defendant names this technique a "bent thumb escort" or a "thumb lock escort." (Doc. 27-1 at 1).

4

The officers then hold Plaintiff against a wall, and Yazell again states that Plaintiff "smacked me right in the cheek." (*Id.* at 1:30–1:34). When Plaintiff denies it, Yazell repeatedly asserts, "Yes, you did." (*Id.* at 1:34–1:36). The two continue to argue before the officers escort Plaintiff to the strip cage. (*Id.* at 1:57–2:58). Once in the strip cage, Plaintiff explains to a different officer that Yazell "acte[d] like he was going to search me, and [when] I turned around to walk, he was 'down there' somewhere. And I didn't even hit him. Honest." (Doc. 29, Video X60A3074R at 0:46–0:55).

Based on this video footage, and the other evidence in the record, the pertinent question is whether there remains a genuine issue of material fact for the jury as to Plaintiff's Eighth Amendment claim. This requires the Undersigned to consider the two components of such a claim.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Yet "not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Sometimes, "[t]he maintenance of prison security and discipline . . . require[s] that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Thus, to prove an Eighth Amendment excessive force claim, a prisoner must satisfy both an objective and a subjective component. *Cordell*, 759 F.3d at 580.

### A. Objective Component

Beginning with the objective component of an Eighth Amendment claim, the Sixth Circuit "requires the pain inflicted to be sufficiently serious." *Id.* (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)) (citation modified). The inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation

5

omitted). "The seriousness of the injuries [is] not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 9). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. But "[t]hat is not to say that every malevolent touch . . . gives rise to a federal cause of action." *Id.* The Eighth Amendment does not protect against "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Hudson*, 503 U.S. at 9–10).

Again, the Undersigned observes that the available video footage corroborates Plaintiff's account to the extent that it shows Yazell exert some force on Plaintiff's back and manipulate his thumb to be parallel to his forearm during the escort. *See Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (quoting *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012)) ("Where, as here, there is 'a videotape capturing the events in question,' the court must 'view those facts in the light depicted by the videotape.'" (cleaned up)). But medical records show Plaintiff had no observable injuries following the incident. (Doc. 23 at 18). And Plaintiff declined to make an official statement about either his condition or the incident following the use of force. (*Id.* at 17). What's more, when examined after the incident, Plaintiff told Nurse Cox "I don't have any injuries. I'm fine." (*Id.* (cleaned up); *see also id.* at 26). Though Plaintiff now claims that he complained about his thumb to Nurse Cox and subsequently asked to be examined and was denied, he has not provided any support for these assertions. (*See, e.g.*, Doc. 25 at 5). And the Court does not have the footage of Plaintiff's visit with Nurse Cox before it. (*See* Doc. 33 (noting Defendant

6

filed all body worn camera footage and all security video stemming from the incident at issue)). Put simply, the record supports the conclusion that Plaintiff suffered no discernible injury that can be attributed to Defendant Yazell's actions.

Still, Plaintiff claims that the way Yazell bent his thumb for about thirty seconds caused him "excruciating pain" and, as a result, his thumb was swollen and painful in the following days. (Doc. 26 at 3; *see also* Doc. 25 at 5). Unfortunately for Plaintiff, these types of injuries, and the force used to cause them, are not enough to meet the objective component standard. *See Rafferty*, 915 F.3d at 1094; *see also Bullocks v. Hale*, 478 F. Supp. 3d 639, 648 (S.D. Ohio 2020) ("[Minor swelling and bruising], and more importantly the force required to create it, certainly does not as a general matter offend traditional standards of decency."), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021); *Johnson v. Unknown Coolman, R.U.O.*, 102 F. App'x 460, 461 (6th Cir. 2004) (upholding a district court's conclusion a prisoner alleged only *de minimis* force when he alleged an officer pushed him into his cell, pulled on his handcuffs, and bent his thumb back in an attempt to remove the cuffs); *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) ("Shoving, grabbing, and bending back two of Lockett's fingers also required only minimal force and was reasonably related to the need for forcibly bringing Lockett under control and returning him to his cell."); *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1009 (S.D. Ohio 2017) (finding a shove that caused a prisoner to bump her head but left no discernable injury was insufficient to establish the objective component); *cf. Cowan v. Wellman*, No. 1:23-CV-315, 2024 WL 5187004, at *7 (S.D. Ohio Dec. 20, 2024) (finding no issues of fact as to whether a plaintiff established the objective component where the plaintiff's finger was broken and required surgery following an escort and the defendant did not challenge that claim), *report and recommendation adopted*, No. 1:23-CV-315, 2025 WL 879951 (S.D. Ohio Mar. 21, 2025). Consequently, the Undersigned concludes Plaintiff has failed

to raise a genuine issue of material fact as to the objective component of his Eighth Amendment claim.

B.  **Subjective Component**

Though Plaintiff's claims fail on the objective component, the Undersigned briefly addresses the subjective component as well. The subjective component focuses on the prison official's state of mind and analyzes "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (listing the factors courts should consider). "Force believed necessary, even if that belief is unreasonable, will not violate the Eighth Amendment." *Cowman*, 2024 WL 5187004, at *6 (citation omitted). In considering subjective intent, courts ask questions like: "What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?" *Johnson v. Sootsman*, 79 F.4th 608, 618 (6th Cir. 2023) (citing *Hudson*, 503 U.S. at 7).

Notably, courts must refrain from "unreasonable *post hoc* judicial second-guessing" of prison officials' conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008). Because they "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' [the Court] must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (citing *Hudson*, 503 U.S. at 6)); *see also Sootsman*, 79 F.4th at 618 ("[W]hile judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury."). As such, when examining the need for force, the issue "is not whether the use of force was

absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary." *Cordell*, 759 F.3d at 581 (quoting *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)).

In considering the *Sootsman* factors, "although the Eighth Amendment does not require a prisoner to suffer a 'serious injury,' the 'absence' of such an injury goes a long way to disprove any claim that an officer used force with the required intent to harm." 79 F.4th at 618–19 (quoting *Hudson*, 503 U.S. at 7–8). As previously discussed, Plaintiff had no documented injuries directly after his escort. Nor is there evidence that he suffered a long-term injury in the following months because of Yazell's shove or hold on his thumb. (*See* Doc. 23-1 at 30–60 (Plaintiff's medical records through 12/11/2023, none of which mention Plaintiff's thumb)).

Next, in considering the nature of the threat that justified the force and the amount of force used, Yazell asserts that Plaintiff "turned" during the pat down and "struck [him] in the face and neck." (Doc. 23-1 at 2). Though Plaintiff disputes that he struck or hit Yazell in the face (Doc. 25 at 2), the video footage indisputably shows Plaintiff's arm or hand made contact with Yazell's upper body while Yazell crouched down to inspect Plaintiff's legs. (Doc. 29, Video X60A32970 at 0:25–0:30; *see also id.* at Video X60A38380 at 0:30–0:35). While there may be factual questions as to the amount of force Plaintiff used or where exactly Plaintiff made contact, it is not necessary for the Undersigned to reach them. Importantly, "prison officials may use appropriate force to regain control of an aggressive prisoner" *Cordell*, 759 F.3d at 581, and Defendant's testimony states that Plaintiff was physically resisting a pat down. *See also Combs*, 315 F.3d at 556 (noting that prison officials may use force to maintain "prison security"). The video footage corroborates Defendant's account to the extent it shows Plaintiff moved his hand off the wall when Yazell was still in the process of patting him down. Given this, Yazell's subsequent decision to

push Plaintiff into the wall to place in in handcuffs (Doc. 23-1 at 2), "could plausibly have been thought necessary" *Cordell*, 759 F.3d at 581, and must be afforded "wide-ranging deference" *Combs*, 315 F.3d at 557.

Whether the nature of the threat posed and the amount of force amount of force used during the escort justified Yazell bending Plaintiff's thumb is a closer question. Plaintiff asserts that during the escort, he was not resisting or being "belligerent." (Doc. 26 at 2; *see also* Doc. 25 at 2, 6). The video footage shows that Plaintiff was restrained in handcuffs with his hands behind his back. (*See, e.g.*, Doc. 29, Video X60A32970 at 0:49–1:21). The footage also shows that he appears to be walking normally and following commands. (*Id.*). Defendant does not assert that Plaintiff was resisting during the escort itself, but rather connects the escort, and the threat Plaintiff posed, to Plaintiff's earlier behavior at the wall. (Doc. 23-1 at 2 ("Due to [Plaintiff's] assaultive behavior . . . I escorted [him] . . . from the C Corridor to J2 and secured him in the strip cage.")). And Defendant claims that the use of the bent thumb escort technique was proper. (*Id.*; *see also* Doc. 27-1 (declaration of ODRC training officer Leslie Ellis stating the bent thumb escort is "a common escort technique designed to control the movement of a subject, induce compliance and discourage resistance through joint pressure without causing injury")).

Ultimately, while there may be a question as to whether Plaintiff's earlier contact with Yazell justified use of the bent thumb technique for the first thirty second of Plaintiff's escort, the Undersigned's conclusion on the objective prong obviates the need to reach that question. In other words, because no genuine dispute as to any material fact remains on the objective prong, the case may not proceed, regardless of any remaining uncertainty as to the subjective prong.

10

*****

In sum, Defendant has met his burden of demonstrating that there is no genuine issue of material fact as to Plaintiff's Eighth Amendment excessive force claim. For this reason, the Undersigned need not address Defendant's remaining qualified immunity arguments and **RECOMMENDS** Defendant's Motion be **GRANTED** and Plaintiff's Motion be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS GRANTING** Defendant's Motion for Summary Judgment (Doc. 22) and **DENYING** Plaintiff's Motion for Summary Judgment (Doc. 26).

Date: September 5, 2025  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

### Procedure on Objections

Under Federal Rule of Civil Procedure 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended by the Court on a timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).