UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIO FREEMAN,

      Plaintiff,

        v.

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, et al.,

      Defendants.

Case No. 1:24-cv-298

JUDGE DOUGLAS R. COLE
Magistrate Judge Jolson

## OPINION AND ORDER

Mario Freeman, the Plaintiff in this case, and Southern Ohio Correctional Officer Devon Yazell, the sole Defendant remaining after the Court adopted the Magistrate Judge's prior Report and Recommendation (R&R, Doc. 6), now cross-move for summary judgment, (*see* Doc. 22; Doc. 26). In response, Magistrate Judge Jolson has issued another R&R (Doc. 34) recommending that the Court grant Yazell's motion and deny Freeman's. The Court agrees, so it **ADOPTS** the R&R in its entirety, **GRANTS** Yazell's Motion for Summary Judgment (Doc. 22), and at the same time **DENIES** Freeman's Motion for Summary Judgment (Doc. 26).

## BACKGROUND

Freeman is currently incarcerated at the Southern Ohio Correctional Facility (SOCF). (Compl., Doc. 2, #1). He filed this action pro se in May 2024. (*Id.*). Although his original Complaint named only the Ohio Department of Rehabilitation and Corrections (ODRC), (*id.*), the Complaint contained allegations against several ODRC

officials, (*see id* at #3–4). Thus, on May 28, 2024, the Magistrate Judge ordered Freeman to submit an Amended Complaint identifying all intended Defendants, (*see* Doc. 3), which Freeman did, (*see* Doc. 5).[1] As noted, however, the Magistrate Judge issued an R&R not long thereafter. There, after conducting an initial screening of Freeman's Complaint, she concluded that only Freeman's Eighth Amendment claim against Yazell should proceed. (Doc. 6, #40–41). The Court agreed with that assessment, and so it adopted the R&R in its entirety. (*See* Doc. 9, #55). Thus, at this point, only the Eighth Amendment claim against Yazell remains.

Freeman's sole allegation against Yazell is that

> On [May 31, 2023] at 6:02 p.m., [Officer] Yazell pushed me and put the cuffs on me after an incident. And during the walk to the whole [sic][,] he bent my thumb back trying to break it[,] causing me pain[.] [I]f you look at the camera[,] you can see him bending my thumb back trying to make it look like I was resisting.

(Doc. 2, #3).

Perhaps unsurprisingly, Yazell offers a different account. According to a declaration he submitted with his motion, the "incident" to which Freeman refers arose from a "routine pat down." (Doc. 23-1, #96). When Yazell directed Freeman to place his hands on the wall so that Yazell could conduct the pat down, Freeman "turned and struck [Yazell] in the face and neck." (*Id.*). Another corrections officer, Officer Wellman, stepped in to assist Yazell by holding Freeman in place while Yazell cuffed him. (*Id.*). The two officers then secured Freeman and returned to their duties.

---

[1] Or, rather, Freeman submitted an additional document identifying all the Defendants he intended to sue. (*See* Doc. 3). But the operative allegations still come from Freeman's first Complaint. (*See* Doc. 1).

(*Id.*). Yazell avers that he "did not utilize excessive force against Inmate Freeman" or use "improper escort techniques before, during, or after the escort." (*Id.* at #97). Yazell also declares (1) that he did not injure Freeman, (2) that he did not attempt to break Freeman's thumb, (3) that he completed a true and accurate Use of Force Report, and (4) that Freeman "was found guilty of rule violations 4, 20, and 21 (Causing, or attempting to cause physical harm to another; Physical resistance to a direct order; Disobedience of a direct order), for assaulting [Yazell]." *Id.* This is all consistent with Yazell's Use of Force Report, (*see id.* at #103), affidavits from Wellman and SOCF Deputy Warden of Operations Garry Galloway, (*see id.* at #98–101), and Use of Force reports authored by Wellman and Michael M. Richardson, another SOCF corrections officer who apparently overheard, but did not participate in, the encounter, (*see id.* at #104–05).

But the Court need not rely only on the various accounts of these events that the parties provide. The Court also has video footage of the incident. The Magistrate Judge aptly describes the footage as follows:

> The footage begins by showing Plaintiff place his hands against the wall in preparation for Yazell to search him. (Doc. 29, Video X60A32970 at 0:23). As Yazell bends down to search Plaintiff's legs, Plaintiff brings his left arm backwards. (*Id.* at 0:28). Plaintiff's upper extremity makes contact with Yazell's upper body, though the camera angle does not clearly show the extent of the contact. (*Id.*). Plaintiff immediately lifts his hand back up against the wall. (*Id.* at 0:29). Yazell pushes Plaintiff's back towards the wall, then instructs Plaintiff to put his hands behind his back. (*Id.* at 0:30–0:33). Another officer arrives and holds Plaintiff against the wall while Yazell pulls out handcuffs. (*Id.* at 0:33–0:36).
>
> In response to the second officer asking what happened, Defendant Yazell states Plaintiff "fucking smacked me, dumbass bitch." (*Id.* at 0:38–0:42). After cuffing Plaintiff, Defendant tells him to "come on," and Yazell, along with at least two other officers, escorts Plaintiff down the

hallway. (*Id.* at 0:44–0:52). An officer tells Plaintiff to move his hands, and the officers fumble with Plaintiff's hands and fingers for a few moments. (*Id.* at 0:53–1:03). During the escort, Yazell holds Plaintiff's left arm. (*Id.* at 1:04). One of his hands holds Plaintiff's forearm, while the other grips Plaintiff's thumb. (*Id.*). Yazell holds Plaintiff's thumb in such a way that he bends Plaintiff's thumb straight back, almost parallel to Plaintiff's forearm, for almost thirty seconds of the escort. (*Id.* at 0:52–1:20). Defendant names this technique a "bent thumb escort", or a "thumb lock escort." (Doc. 27-1[, at #197]).

The officers then hold Plaintiff against a wall, and Yazell again states that Plaintiff "smacked me right in the cheek." ([Doc. 29, Video X60A32970,] at 1:30–1:34). When Plaintiff denies it, Yazell repeatedly asserts, "Yes, you did." (*Id.* at 1:34–1:36). The two continue to argue before the officers escort Plaintiff to the strip cage. (*Id.* at 1:57–2:58). Once in the strip cage, Plaintiff explains to a different officer that Yazell "act[ed] like he was going to search me, and [when] I turned around to walk he was 'down there' somewhere. And I didn't even hit him. Honest." (Doc. 29, Video X60A3074R at 0:46–0:55).[2]

(Doc. 34, #223–24).

Following the incident, Freeman declined to give an "Inmate Use of Force Statement." (*See* Doc. 23-1, #111 ("Not right now.")). He did, however, meet with Colton Cox, a registered nurse at SOCF, who has also submitted a declaration describing Freeman's post-incident conduct. (*Id.* at #120–21). Cox "observed no injuries to Inmate Freeman," and when given the opportunity to identify injuries, Freeman declined. (*Id.* at #120). Freeman also declined the opportunity for an additional medical examination. (*Id.*). And "[t]here is no documentation that Inmate Freeman asked for medical care for his thumb between May 31, 2023, and October 25, 2023." (*Id.* at #121). Despite that, however, Freeman contends that he

---

[2] The footage, honestly viewed, belies Freeman's claim. While the blow that Freeman landed on Yazell was no doubt a minor one that likely inflicted little damage, it was nonetheless a deliberate strike, rather than an effort to "turn[] around," as Freeman suggests.

4

communicated a thumb injury to both medical and correctional officers at SOCF. (Doc. 25, #176). He also says that, the day after the altercation, his thumb started to swell and hurt badly when moved. (*Id.*).

Based on that record, both parties moved for summary judgment. (*See* Doc. 22; Doc. 26). And in her R&R, the Magistrate Judge recommends that the Court grant Yazell's motion and deny Freeman's. (Doc. 34, #230). The R&R explains that the allegations underlying Freeman's Eighth Amendment claim are corroborated in part by the video evidence to which Freeman refers. (*See id.* at #223–24). Specifically, as discussed, the video establishes (1) that Freeman assaulted Yazell, (2) that Yazell cuffed Freeman with Wellman's help, and (3) that Yazell used a "bent thumb escort" or "thumb lock escort" while escorting Freeman. (*Id.*).

Based on that, the question for the Magistrate Judge was whether "there remains a genuine issue of material fact for the jury as to [Freeman's] Eighth Amendment claim," an inquiry that involves both an objective and a subjective prong. (*Id.* at #224–229). The Magistrate Judge concluded that, while the video partly corroborates Freeman's story, the injury about which Freeman complains is insufficient as a matter of law under the objective component of the Eighth Amendment analysis. (*See id.* at #224–27). As for the subjective component, the Magistrate Judge concluded that "there may be a question as to whether [Freeman's] earlier contact with Yazell justified the use of the bent thumb technique for the first thirty seconds of [Freeman's] escort." (*Id.* at #229). But ultimately, the Magistrate Judge's analysis under the objective component obviated the need for a determination

5

either way. (*Id.*). In short, then, the Magistrate Judge found the objective component dispositive.

The R&R explained that Freeman had fourteen days from the date of receipt to object to the recommended disposition. (*See id.* at #230). The Court received Freeman's objections eighteen days later, on September 26, 2025. (Doc. 35). Yazell then filed a Response, contending that Freeman's objections were late (and contained other technical defects), and also reiterated his argument on the merits. (*See* Doc. 36, #238–44). Freeman then replied to that Response, explaining that he did not receive the R&R until eight days after the Magistrate Judge issued it. (*See* Doc. 37, #246). And Freeman also took the opportunity to remind the Court of *his* views on the merits. (*See id.* at #247). With Freeman's objections in the record, the matter is ripe for review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at \*1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

6

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Freeman is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For any unobjected portions of an R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

7

## LAW AND ANALYSIS

The R&R recommends summary judgment for Yazell on Freeman's remaining Eighth Amendment claim. (Doc. 34, #230). Ultimately, the Court agrees. Before turning to the merits, though, the Court starts with a threshold issue—the timeliness of Freeman's objections. On that front, given Freeman's explanation for any delay, along with his pro se status, the Court concludes it will consider Freeman's objections.

That said, the objections do not change much. As relevant here, Freeman "objects to bending the thumb back as a legal technique to escort an inmate somewhere because it causes so much pain unnecessarily." (Doc. 35, #233). In his view, "[a]ny intelligent person can see Yazell was not being attacked when he bent Plaintiff Freeman['s] thumb back." (*Id.*). The Court construes Freeman's objection to the "legal technique" (i.e., the "thumb lock escort") as an objection to the Magistrate Judge's analysis under the objective prong of Freeman's Eighth Amendment claim. So the Court will review that issue de novo.

To start, it is clear that the Eighth Amendment provides the proper rubric to analyze Freeman's claim. Freeman is a convicted prisoner, and "all post-conviction excessive force claims are to be raised 'exclusively under the Eighth Amendment's cruel and unusual punishment clause.'" *Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995) (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992)). "The Eighth Amendment prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII)). "But not every shove or restraint gives rise to a constitutional violation." *Id.* (quoting *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). And

sometimes, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey*, 43 F.3d at 1037). That said, prison officials are still barred from inflicting "unnecessary and wanton" pain in carrying out their duties. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

As mentioned, Eighth Amendment claims involve an objective and a subjective component. *Cordell*, 759 F.3d at 580. Generally, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). But that's not the only consideration. The Eighth Amendment inquiry is "contextual" and "responsive to contemporary standards of decency." *Id.* (citation omitted). And the Supreme Court has held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated whether or not significant injury is evident." *Id.* (citation omitted). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolical or inhumane, inflicting less than some arbitrary quantity of injury." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). But even here, context figures centrally in the analysis. It is not the case that "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (citation omitted). As a result, the ban on cruel and unusual punishments does not extend to "de minimis uses of physical force, provided that the use of force is not of a

sort repugnant to the conscience of mankind." *Id.* (cleaned up) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

In this case, the Magistrate Judge concludes that Freeman's injury represents precisely the sort of de minimis injury that the Eighth Amendment does not reach. And, considering the issue de novo, the Court agrees. Case after case from the Sixth Circuit and the district courts within it holds that injuries like Freeman's are simply not enough to satisfy the Eighth Amendment's objective component. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) ("Shoving, grabbing, and bending back two of Lockett's fingers also required only minimal force and was reasonably related to the need for forcibly bringing Lockett under control and returning him to his cell."); *Johnson v. Unknown Coolman, R.U.O.*, 102 F. App'x 460, 461 (6th Cir. 2004) (holding that "attempt[ing] to bend [the plaintiff's] thumb back" inflicted only de minimis injury); *Bullocks v. Hale*, 478 F. Supp. 3d 639, 646 (S.D. Ohio 2020) ("[M]inor bruising and slight swelling seem like almost paradigmatic examples of a de minimis injury." (italics omitted)), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021); *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1009 (S.D. Ohio 2017) ("[A]n alleged 'shove' that caused Plaintiff to 'bump' her head—causing no discernable harm of record—is insufficient harm."). To be sure, if Freeman had shown that Yazell, for example, broke Freeman's thumb, the result would be different. *See Bullocks*, 478 F. Supp. 3d at 645; *see also Cowan v. Wellman*, No. 1:23-cv-315, 2024 WL 5187004, at *7 (S.D. Ohio Dec. 20, 2024) (holding that there was no genuine dispute of material fact as to the plaintiff's Eighth Amendment excessive force claim where it was undisputed that the

10

defendant had broken the plaintiff's pinky finger). But, as the undisputed evidence shows, that's not what happened here.

In sum, the objective component of Freeman's Eighth Amendment claim fails. Because success on this element is a necessary condition of Freeman's victory in this case, summary judgment for Yazell is appropriate. The Court need not, and does not, consider the subjective component of the claim.

## CONCLUSION

For these reasons, the Court **ADOPTS** the R&R (Doc. 34) in its entirety, **GRANTS** Yazell's Motion for Summary Judgment (Doc. 22), and thus **DENIES** Freeman's Motion for Summary Judgment (Doc. 26). The Court further **DIRECTS** the Clerk to enter judgment for Yazell and **TERMINATE** this case on its docket.

**SO ORDERED.**

February 19, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**